OPINION
PER CURIAM.
Salaudin Makelara petitions for review of a Board of Immigration Appeals (“BIA”) decision dismissing his appeal of an Immigration Judge’s (“IJ”) decision denying his applications for relief from removal. We will deny the petition for review.
Makelara is a native and citizen of Macedonia. He arrived in the United States in January 2007. Shortly thereafter, a notice to appear was issued charging that Makelara was subject to removal because he entered the United States without having been admitted or paroled. Through counsel, Makelara conceded that he was removable as charged. He applied for asylum, withholding of removal, and protection under the Convention Against Torture (“CAT”).
Makelara, who is Albanian, testified that he left Macedonia for political and economic reasons. He explained that he first had problems in Macedonia in 1994, when he was a member of the Democratic Party of Prosperity (“PPD”). Makelara attended a PPD rally to protest discrimination against Albanians, which was broken up by police. When Makelara returned home to the city of Dibar, he received a notice to report to the police. Makelara stated that he went to the police station but refused to identify his friends, who were depicted in photographs shown to him by police. The police beat him with a rubber club on the ribs and back, held him overnight, and told him not to participate in the party. Makelara received treatment from a private doctor and recovered in approximately two weeks.
Makelara further testified that the police arrested and beat him on account of his political activities in 1997, 2002, 2003, and 2006. He stated that the police arrested him in 1997 at a PPD demonstration for the legalization of the University of Teto-va. He was held for one night, beaten with a rubber club, and needed almost two weeks to recover. Makelara stated that he was arrested three times in 2002 because he participated in PPD meetings and rallies seeking to officially register the University of Tetova. He stated that he was detained for one night and beaten each time.
*205 Makelara also testified that he was arrested in March 2008 while leaving the headquarters for the Democratic Union for Integration, which he joined in 2003. During this arrest, Makelara refused to answer questions and he was detained for 24 hours and beaten two or three times. Lastly, Makelara testified that the police arrested him, detained him for one night, and beat him in August and September of 2006 in Dibar. Makelara also stated that police stopped him sometimes two times a day because he was a member of a political party and Albanian. Makelara believes that he will be imprisoned and perhaps killed if he returns to Macedonia because he left the country and he has talked about the conditions there. Makelara stated that authorities questioned his wife on one occasion after he left Dibar.
Makelara also testified to the difficulties he had finding employment. He stated that he worked for a company as an agronomist from 1979 until August of 1994 or 1995, when the Macedonian government pressured his boss to lay him off. Make-lara stated he was unable to find another full-time job because he is Albanian and that he worked in part-time labor positions.
The IJ found Makelara not credible based on inconsistencies between his written statement and testimony and the fact that his testimony changed during the course of the hearing. The IJ explained that Makelara initially testified that the 1994 demonstration was in the town of Goseivar, but his statement provided that the demonstration was in Tetova. On cross-examination, Makelara stated that the demonstration in fact occurred in Teto-va. The IJ also noted inconsistencies between Makelara’s accounts of the questioning by police in 1994. The IJ explained that Makelara testified that the police had pictures of him with five friends and they wanted the names of his friends. Makera-la’s written statement, however, provides that the police showed him pictures of dozens of groups of Albanians, that the police had written his name and the names of five other demonstrators on a photograph, and that the police asked him the names of the rest of the demonstrators.
The IJ also found inconsistent evidence concerning Makelara’s job termination. The IJ explained that Makelara’s statement provides he was fired two weeks after he was released from detention in October 1994 due to pressure from the police. Makelara testified, however, that he worked until August 1995. Although Makelara later stated that he may have been fired in August 1994, the IJ noted that would have been before he was arrested. The IJ further noted that Makelara testified that he feared seeking medical treatment after his 1997 arrest, but he could not explain why he had such a fear given that he sought medical treatment after his 1994 arrest.
The IJ also stated that Makelara testified that he was arrested three times in 2002, but his statement was best interpreted as providing that he was arrested three times after the year 2002 — in March 2003, August 2006, and September 2006. When his attorney asked him about his 2002 arrests, Makelara was unable to provide any dates or details. The IJ concluded that Makelara did not establish that he was arrested in 2002. The IJ further stated that, even if Makelara’s statement could be construed as referring to three arrests in 2002, contrary to his testimony, he did not mention that he was beaten.
The IJ also noted that Makelara testified that he became a member of the Democratic Union for Integration in 2003, but when he was confronted with a membership card reflecting the year 2002, he stated he might have been a member in 2002. The IJ also found that Makelara did not provide reasonably available corroborating *206 evidence or adequately explain the absence of such evidence.
Based on the adverse credibility finding and lack of corroborative material, the IJ concluded that Makelara failed to meet his burden of proof on his applications for relief from removal. The IJ recognized that the background materials reflected discrimination against Albanians and that Makelara may have better economic opportunities here, but she stated that relief could not be granted on that basis.
The BIA affirmed the IJ’s adverse credibility finding and dismissed Makelara’s appeal. The BIA stated that the IJ relied upon valid material inconsistencies and discrepancies for which Makelara had not provided sufficient explanations. The BIA noted the IJ’s reliance on the evidence regarding Makelara’s arrests in 2002, including his omission in his statement that he was beaten during these arrests and his inability to recall the dates of these arrests on direct examination. The BIA also noted inconsistencies in the evidence as to when Makelara’s job was terminated, the inadequate explanation as to why he feared seeking medical treatment in 1997, and his failure to submit sufficient supporting documentation in light of the problems with his credibility.
The BIA rejected Makelara’s argument that the inconsistencies cited by the IJ were minor, explaining that, under the REAL ID Act, the IJ was permitted to rely on inconsistencies that did not go to the heart of the claim. The BIA further found that the inconsistencies in this case were central to Makelara’s claim of mistreatment. The BIA concluded that Mak-elara had not satisfied his burden of proof for asylum, withholding of removal, or protection under the CAT. Finally, the BIA noted that Makelara’s wife and three children still live in Macedonia and have not suffered any harm. This petition for review followed.
We review the agency’s factual findings, including adverse credibility findings, for substantial evidence. Chen v. Att’y Gen., 484 F.Sd 212, 216 (3d Cir.2005). Under this standard of review, we will uphold the agency’s findings unless a reasonable adjudicator would be compelled to conclude to the contrary. Id. When the BIA substantially relies on an IJ’s adverse credibility finding, we have jurisdiction to review both the BIA’s and IJ’s opinions. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir.2004). Makelara’s applications for relief are governed by the REAL ID Act, under which a credibility determination may be based on an alien’s demeanor and responsiveness, the plausibility of the alien’s account, and inconsistencies in the evidence, regardless of whether the inconsistencies go to the heart of the alien’s claim. 8 U.S.C. § 1158(b)(l)(B)(iii).
Makelara first argues that his omission from his statement of the fact that he was beaten during his 2002 arrests is a trivial error and insufficient for the BIA to uphold an adverse credibility finding. The BIA’s reliance on this omission, however, was just one of several bases for upholding the adverse credibility finding. In addition, harm suffered by Makelara on account of his political opinion is central to his claim of persecution. The BIA also noted that the IJ did not find convincing Makelara’s explanation that he did not mention the beatings because it is assumed that a person is beaten when arrested. The IJ explained that Makelara had noted that he was beaten during his other arrests. Although Makelara further stated that his beatings in 2002 were less severe than those in other years, the BIA did not err in relying on this omission where, as discussed below, he was also unable to provide detailed testimony about his 2002 arrests.
Makelara also challenges the BIA’s reliance on the fact that he was unable to *207 recall the dates of his three arrests in 2002 on direct examination, but that he was able to provide specific months on cross-examination. Makelara argues that there is no inconsistency and that his testimony is consistent with his written statement that he was arrested three times in 2002. In referring to Makelara’s inability to recall the dates of his arrests in 2002, the BIA cited pages eight to ten of the IJ’s opinion, which reflects that the IJ found Makelara evasive and unable to provide details about the 2002 arrests. The IJ ultimately concluded that Makelara was arrested three times after 2002, not in 2002. IJ Dec. at 18-19. The record reflects Makelara’s inability to provide detailed testimony about arrests in 2002 and the BIA did not err in relying on this testimony to support an adverse credibility determination.
Makelara also challenges the BIA’s reliance on his inability to explain why he feared seeking medical treatment in 1997 when he had sought such treatment in 1994. Makelara argues that he explained that he did not want to be questioned about the cause of his injuries like he was in 1994, that the BIA did not state why this explanation was implausible, and that the BIA did not state the significance of the implausibility. The record reflects that the IJ was probing the reasonableness of Makelara’s testimony that he did not to go to a doctor after his 1997 arrest because he was afraid. A.R. at 179-81. The IJ asked whether something had happened to him as a result of the doctor learning the cause of his injuries in 1994. Makelara’s reply was non-responsive and he was unable to explain why he did not want a doctor to know the cause of his injuries in 1997. We find no error in the BIA’s reliance on this line of questioning in assessing his credibility.[1]
Finally, Makelara argues that the BIA erred in affirming the denial of protection under the CAT based on the adverse credibility finding. Makelara is correct. See Zubeda v. Ashcroft, 333 F.3d 463, 476 (3d Cir.2003) (stating alien’s credibility for purposes of asylum and withholding of removal does not defeat the alien’s ability to meet the burden of proof under the CAT). However, unlike in Zubeda, Makelara has not pointed to any objective evidence suggesting that he would more likely than not be subjected to torture if removed to Macedonia. Makelara only points to parts of the record that might support an inference that he will experience ethnic discrimination in Macedonia. Thus, relief is not warranted.
Accordingly, we will deny the petition for review.

. Makelara also challenges the IJ’s reliance on inconsistencies between his testimony and written statement as to where the 1994 demonstration occurred and his accounts of questioning by police in 1994. These inconsistencies further support the adverse credibility finding.